# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
### AT LOUISVILLE

| | |
|---|---|
| **JULIE A. BARNES** ) | |
| 2009 Hamburg Pike ) | |
| Lot 88 ) | |
| Jeffersonville, IN 47130 ) | |
| ) | |
| **and** ) | |
| ) | |
| **SHEYANNE R. BARNETT** ) | |
| 2984 Wilson Avenue ) | |
| Apartment 200 ) | |
| Louisville, KY 40211 ) | |
| ) | |
| ) | |
| ) | |
| **PLAINTIFFS,** ) | **CIVIL ACTION NO.:** |
| ) | |
| **v.** ) | ___3:21-cv-196-DJH___ |
| ) | |
| **SAFE ZONE SERVICES, LLC** ) | |
| 4333 Robards Lane ) | |
| Louisville, KY 40218 ) | ***COMPLAINT AND*** |
| ) | ***JURY DEMAND*** |
| **SERVE:**   Daniel B. Walsh ) | |
|            4333 Robards Lane ) | |
|            Louisville, KY 40218 ) | |
| ) | |
| ) | |
| **UEC HOLDINGS,  INC.** ) | |
| 4333 Robards Lane ) | |
| Louisville, KY 40218 ) | |
| ) | |
| ) | |
| **SERVE:**   Steven A. Goodman ) | |
|            500 W. Jefferson St., Suite 2100 ) | |
|            Louisville, KY 40202 ) | |
| ) | |
| ) | |
| ) | |
| **and** ) | |

**UNITED ELECTRIC COMPANY, INC.**     )
4333 Robards Lane     )
Louisville, KY 40218     )
     )
     )
    <u>**SERVE:**</u>    Daniel B. Walsh     )
     4333 Robards Lane     )
     Louisville, KY 40218     )
     )
     )
     )
    **DEFENDANTS.**     )

Come the Plaintiffs, Julie Barnes and Sheyanne Barnett, by counsel, and for their Complaint and Jury Demand against the above-named Defendants provide as follows:

<u>**PARTIES**</u>

1.   Plaintiff, Julie Barnes, is and at all times pertinent hereto was, a resident of Jeffersonville, Clark County, Indiana. Plaintiff, Sheyanne Barnett, is and at all times pertinent hereto was a resident of Louisville, Jefferson County, Kentucky.

2.   Defendant Safe Zone Services, LLC is a Kentucky Limited Liability Company with its principal place of business located at 4333 Robards Lane, Louisville, Kentucky. Safe Zone Services, LLC's agent for service of process is Daniel B. Walsh with a mailing address of 4333 Robards Lane, Louisville, Kentucky.  Defendant UEC Holdings, Inc. is a Kentucky corporation with its principal place of business being 4333 Robards Lane, Louisville, Kentucky.  Defendant UEC Holdings, Inc. agent for service of process is Steven A. Goodman with a mailing address of 500 West Jefferson Street, Suite 2100, Louisville, Kentucky.   Defendant United Electric Company, Inc. is a Kentucky corporation with its principal place of business being located at 4333 Robards Lane, Louisville, Kentucky.  Defendant United Electric Company, Inc.'s agent for service of process is Daniel B. Walsh with a mailing address of 4333 Robards Lane, Louisville,

Kentucky.  For all purposes, both jurisdictional and legal, within this Complaint, Plaintiffs allege

that Defendant Safe Zone Services, LLC, Defendant UEC Holdings, Inc. and Defendant United

Electric Company, Inc. (hereinafter collectively referred to as "Defendants") are "joint

employers" within the meaning of 42 U.S.C. Section 2000e *et seq.* (Title VII of the Civil Rights

Act of 1964, as amended) and the Kentucky Civil Rights Act encoded at KRS Chapter 344.  The

joint employer doctrine was recognized by the Supreme Court in *Boire v. Greyhound Corp.*, 376

U.S. 473 (1964), and has been clearly articulated in the Sixth Circuit since its decision in

*Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990 (6th Cir. 1997). The Sixth Circuit

went on to observe:

> The basis of the [joint employer] finding is simply that one employer while
> contracting in good faith with an otherwise independent company, has retained for
> itself sufficient control of the terms and conditions of employment of the
> employees who are employed by the other employer. Thus, the "joint employer"
> concept recognized that the business entities involved are in fact separate but that
> they share or co-determine those matters governing the essential terms and
> conditions of employment.

*Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993 n.4 (6th Cir. 1997) (citing

*NLRB v. Browning-Ferris Indus., Inc.*, 691 F.2d 1117, 1123 (3rd Cir. 1982) (citations omitted)).

Plaintiffs further assert that Defendants are also "alter egos" of each other for all purposes within

the context of this Complaint as these three Defendants have substantially identical management,

business, purpose, operation, customers, supervision, and ownership, and were formed by the

ownership of each of the Defendants, in part, with the intent of avoiding independent corporate

or company liability such as the liability alleged by the Plaintiffs in this Complaint pursuant to

the provisions of 42 U.S.C. Section 2000e *et seq.* (Title VII of the Civil Rights Act of 1964, as

amended) and the Kentucky Civil Rights Act encoded at KRS Chapter 344.

## JURISDICTION AND VENUE

3.  This Court has subject matter jurisdiction over the claims set forth herein pursuant to 28 U.S.C. Section 1331 as the Plaintiffs' respective actions arise under the provisions of 42 U.S.C. Section 2000e *et seq.* (Title VII of the Civil Rights Act of 1964, as amended).  This Court has supplemental jurisdiction over Plaintiffs' claims filed under the provisions of the Kentucky Civil Rights Act encoded at KRS Chapter 344 pursuant to 28 U.S.C. Section 1367.

4.  Venue is proper in this judicial district pursuant to 28 U.S.C. Section 1391(b) as a substantial part of the events or omissions giving rise to these claims occurred in this judicial district.

## STATEMENT OF PERTINENT FACTS RELEVANT TO PLAINTIFF BARNES

5.  Plaintiff Julie Barnes (hereinafter "Plaintiff Barnes" or "Barnes") was employed by Defendants as a Flagger beginning on or around September 19, 2019. Plaintiff Barnes initially worked for Defendants' as a full-time employee averaging 40 to 60 hours a week.

6.  Plaintiff Barnes' duties as a flagger involved traveling to various work sites to direct or control traffic around road construction sites. These duties frequently required Barnes to be partnered with another employee for transportation and safety purposes at various work sites. At the start of her employment, Plaintiff Barnes was assigned to work with George Kirby—a fellow flagger who was assigned by Defendants' agents or employees to train her.

7.   Shortly after Plaintiff Barnes began working with Mr. Kirby, Kirby began to subject Ms. Barnes to unwelcome and highly offensive conduct of a sexual nature on a frequent basis in the workplace.  More specifically, Mr. Kirby's conduct consisted of, but was not limited to, Kirby making sexually explicit comments regarding Barnes' body; Kirby making inappropriate propositions for sexual acts and requests for dates to Barnes; and Kirby taking unauthorized

4

pictures of Barnes' breasts and butt. Additionally, Mr. Kirby demanded that Barnes "suck his cock," let him "eat her out" in the work truck, and that he wanted to "fuck that pussy from behind." Such comments were made by Mr. Kirby to Plaintiff Barnes on almost every occasion that the two worked together a work partners for the Defendants.  Mr. Kirby subjected Plaintiff Barnes to the above-described unwelcome and highly offensive sexually motivated conduct throughout Plaintiff Barnes' employment with the Defendants despite her persistent requests for Mr. Kirby to stop his sexually offensive and inappropriate conduct.

8.   During Plaintiff Barnes' employment with Defendants, Mr. Kirby obtained Plaintiff Barnes' cell phone number from her personnel file without her permission and thereafter began calling and texting Plaintiff Barnes during her flagger duties when Plaintiff Barnes and Mr. Kirby were not assigned to work together.  Also, Mr. Kirby began making unwanted telephone calls and texts to her cell phone after work hours. In these messages and during these unwanted phone calls, Mr. Kirby continued to ask Plaintiff to go out with him on dates and made other inappropriate comments. Plaintiff Barnes ignored Mr. Kirby's communications and continued to reject his sexual advances and propositions.

9.   Mr. Kirby also inappropriately touched Plaintiff Barnes on the occasions that the two individuals worked together.  On numerous instances, Mr. Kirby grabbed Barnes' thighs and attempted to rub her inner thigh while she rode in the truck with him.  Mr. Kirby also grabbed or touched Plaintiff Barnes' butt on more than six occasions during her employment with Defendants. On one occasion, Mr. Kirby grabbed Barnes' arm and tried to force her to kiss him. Throughout her employment with Defendants, Plaintiff Barnes repeatedly told Mr. Kirby to stop touching her and that his touching and other sexually offensive conduct that he subjected her to was unwanted and offensive.

10. On or around January 2020, Mr. Kirby gained unauthorized access to Plaintiff Barnes' "SnapChat" account to look for pictures of Plaintiff Barnes. On another occasion, Mr. Kirby found nude photos online of other women and showed them to his co-workers, claiming the explicit photographs were of Plaintiff Barnes.

11. On or around February 2020, Plaintiff Barnes made a verbal complaint regarding Mr. Kirby's sexually inappropriate behavior to Defendants' management personnel. In response to her complaints, two supervisors, Jenny [last name unknown] and Samantha Bartley, told Plaintiff Barnes to "get over it." Additionally, Ms. Bartley stated that it was her opinion that Plaintiff Barnes was bringing the sexual harassment upon herself due to the way she dressed at work. However, Plaintiff Barnes, like many other female employees of the Defendants, wore yoga pants, sweatshirts, t-shirts, or a tank-top and shorts to work depending on the weather conditions. Defendants' agents and/or employees never informed Plaintiff Barnes that her work attire was inappropriate prior to her making complaints about Mr. Kirby's sexual harassment of her in the workplace. Moreover, Defendants' employee handbook never described what work attire was appropriate or inappropriate.

12. On or around March 2020, Plaintiff Barnes made a verbal complaint to Mark Hatcher, an officer, shareholder, and/or member of one or more of the corporate Defendants, regarding Mr. Kirby's continued sexually inappropriate behavior after her previous complaints to Jenny and Samantha Bartley failed to correct Mr. Kirby's sexually offensive actions directed towards her in the workplace. Mr. Hatcher responded that Mr. Kirby was "just that way," and that Plaintiff Barnes needed to "deal with it or find another job." Moreover, Mr. Hatcher suggested to Plaintiff Barnes that the sexually inappropriate comments and unwanted touching between Mr. Kirby and Plaintiff Barnes were consensual. In total, Plaintiff Barnes made over

ten complaints to Mr. Hatcher and/or other management personnel for Defendants regarding Mr. Kirby's sexually inappropriate behavior during the course of her employment with Defendants. Despite these repeated complaints, Mr. Kirby continued to engage in sexually inappropriate conduct directed towards Plaintiff Barnes.

13.   Despite Plaintiff Barnes' repeated complaints to Defendants' agents or employees about Mr. Kirby's sexually inappropriate conduct in the workplace, Defendants' management personnel promoted Mr. Kirby to Traffic Control Supervisor. As a result of this promotion, Plaintiff Barnes was no longer assigned to work with Mr. Kirby at a specific worksite. Nonetheless, Mr. Kirby's new supervisory responsibilities allowed him to show up unannounced at Plaintiff Barnes' work location at which point he continued to sexually harass Plaintiff Barnes. In fact, Mr. Kirby's new supervisory role allowed him to show up at Plaintiff's daily assigned work sites two to three times every shift at which point he would continue to engage in sexually inappropriate and highly offensive conduct of a sexual nature directed at Plaintiff Barnes. During these unannounced visits, Mr. Kirby, in his capacity as Plaintiff Barnes' supervisor, continued to make inappropriate sexual comments to her; take unauthorized pictures of Plaintiff Barnes; touch her inappropriately and without permission; and ask Plaintiff Barnes to perform sexual favors for him.

14.   After Plaintiff Barnes' continued complaints, Defendants' agents and/or employees began to reduce Plaintiff Barnes' work hours from her normal forty to fifty hours per week that she worked prior to making complaints about Mr. Kirby's sexually inappropriate and highly offensive conduct to approximately twenty hours a week without explanation and despite the fact that work was available with the Defendants that would have allowed her to continue working her normal forty to fifty hours per week.  After Plaintiff Barnes made additional complaints to

7

management for the Defendants regarding Mr. Kirby's continued sexually inappropriate and offensive conduct directed towards her in the workplace, Defendants' agents and/or employees again reduced her work hours from approximately twenty hours per week to ten hours a week or less. In fact, Defendants began to only offer Plaintiff Barnes work shifts that were in the middle of the night as Defendants' agents and/or employees knew Plaintiff Barnes cared for her three young children and would not be available to work such shifts.

15.   Along with Defendants reducing Plaintiff Barnes' hours in retaliation for her repeated complaints against Mr. Kirby as more fully described in the previous paragraphs of this Complaint, Defendants agents and/or employees also subjected Plaintiff Barnes to other instances of retaliation in the form of unwarranted write-ups. The first write up was from Mr. Kirby stating that Plaintiff Barnes failed to wear a hard hat on the job. However, Mr. Kirby's complaint addressed a time when Plaintiff Barnes was taking her lunch break, was not in a work zone, and at a location where other similarly situated employees of the Defendants were also not wearing hard hats.  Not surprisingly, the other employees of the Defendants were never written-up for not wearing a hard hat. The second retaliatory write-up Plaintiff Barnes received was in response to her alleged insubordination to Ms. Samantha Bartley shortly after Plaintiff Barnes complained about Mr. Kirby's sexually offensive conduct to Ms. Bartley.

16.   On or about June 14, 2020, Plaintiff Barnes was admitted to Clark Memorial Hospital for an incident in which she threatened to commit suicide as a result of the emotional toll the ongoing harassment had taken on her mental well-being.  On that date, Plaintiff Barnes was treated for depression, anxiety, and suicidal ideations. Since this hospital visit, Plaintiff Barnes has dealt with daily mental and emotional issues that interferes with her relationships with her children and significant others.

17.  On or about January 4, 2021, Plaintiff Barnes received from the EEOC a "Dismissal and Notice of Rights" for her claims of discrimination and retaliation against Defendants. A copy of the Notice is attached hereto as "Exhibit A."

18.  As of February 2021 and continuing thereafter, Defendants offered Plaintiff Barnes extremely limited work opportunities and hours which evidences continued retaliation on the part of the Defendants for Plaintiff Barnes' repeated complaints to Defendants' management personnel regarding Kirby's sexually inappropriate behavior.  Moreover, Mr. Kirby's ongoing sexual harassment of Plaintiff Barnes coupled with Defendants' agents and/or employees intentional retaliatory acts against Plaintiff Barnes after her repeated complaints to Defendants' agents and/or employees in an attempt to stop Mr. Kirby's outrageous behavior created intolerable working conditions that would be perceived by a reasonable worker in Plaintiff Barnes' position with Defendants as intolerable, and that was otherwise engaged in by Defendants' agents and/or employees with the intent of forcing Plaintiff Barnes to quit her employment with Defendants or to otherwise persuade her to reject the limited work opportunities that Defendants offered her.

**STATEMENT OF PERTINENT FACTS RELEVANT TO PLAINTIFF BARNETT**

19.  Plaintiff Sheyanne Barnett (hereinafter "Plaintiff Barnett" or "Barnett") was employed by Defendants beginning on or about February 20, 2020 as a flagger. At the beginning of her employment with Defendants, Plaintiff Barnett was a full-time employee working an average of thirty-five to forty hours per workweek.

20.  Plaintiff Barnett's duties as a flagger involved traveling to various work sites to direct or control traffic around road construction. These duties frequently required Plaintiff Barnett to be partnered with another employee for transportation to various construction sites and

for flagging work at the construction sites. At the start of her employment, Plaintiff Barnett was paired with Andre Tarice, a road supervisor for Defendants. During their work together while employed by Defendants, Mr. Tarice engaged in unwanted and sexually inappropriate conduct directed towards Plaintiff Barnett that made her uncomfortable and made it difficult to perform or otherwise interfered with her ability to perform her job duties for the Defendants.

21.   More specifically, Mr. Tarice made sexually inappropriate comments to Plaintiff Barnett including, but not limited to, Mr. Tarice stating that he was going to "smack that [Barnett's] ass", Mr. Tarice referencing how "big his dick was," and Mr. Tarice asking Plaintiff Barnett "when are you going to give me a chance? I know you got some good pussy; I'll fuck you good all night."

22.   Plaintiff Barnett frequently told Mr. Tarice to stop speaking to her inappropriately and to quit asking for sexual favors.  Unfortunately, when Plaintiff Barnett rebuffed his advances or requested that Mr. Tarice stop his sexually offensive behavior Mr. Tarice would engage in aggressive and intimidating behavior towards Plaintiff Barnett.  Mr. Tarice also threatened to reduce Plaintiff Barnett's normal forty hour workweek if she continued to rebuff his sexual advances or otherwise tell him to stop making sexually inappropriate comments.

23.   On one occasion, Mr. Tarice made the comment that if Plaintiff Barnett were to report his sexually inappropriate behavior to Defendants' management personnel, then her normal work hours would be cut.

24.   On or around August 2, 2020, Plaintiff Barnett made a verbal complaint to some of Defendants' management personnel named Jenny [last name unknown] and Samantha Bartley regarding Mr. Tarice's ongoing and repeated sexually inappropriate comments and requests for sexual favors to her in the workplace. Immediately following this complaint regarding Mr.

Tarice, Defendants' agents and/or employees reduced Plaintiff Barnett's work hours with Defendants from her normal forty hours per week to a range from zero hours per week to ten hours per week in retaliation for Plaintiff Barnett's complaints of sexual harassment against Mr. Tarice.

25.   On or around September 2020, Defendants' management personnel notified Plaintiff Barnett that she was no longer covered by Defendants' insurance that was provided as a benefit of her employment with the Defendants until that time.   Shortly thereafter, Defendants never contacted Plaintiff Barnett again for additional work assignments with the Defendants although she was never formally notified of her termination by the Defendants or otherwise given a reason as to why she had been terminated or not provided additional work assignments with the Defendants.

26.   On about January 4, 2021, Plaintiff Barnett received from the EEOC a "Dismissal and Notice of Rights" for her claims of discrimination and retaliation against Defendants. A copy of the Notice is attached hereto as "Exhibit B."

### COUNT I

### SEXUALLY HOSTILE WORK ENVIRONMENT AGAINST PLAINTIFF BARNES IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AND THE KENTUCKY CIVIL RIGHTS ACT

27.      Plaintiffs reallege each and every allegation set forth in paragraphs 1 through 26 of the Complaint as if fully set forth herein.

28.      Plaintiff Barnes, as a female, is a member of a protected class under Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act, KRS Chapter 344. Additionally, Plaintiff Barnes is an "employee" of the Defendants within the meaning of Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act, KRS Chapter 344.

29.     Defendants, acting as individual entities and/or "joint employers" or alter egos of each other, are "employer(s)" of Plaintiff Barnes within the meaning of Title VII of the Civil Rights Act and the Kentucky Civil Rights Act, KRS Chapter 344.

30.     As more fully described in the preceding paragraphs of this Complaint, Plaintiff Barnes was subjected to a workplace of unwelcome and highly offensive conduct and insults of a sexual nature while employed by Defendants that was so severe and pervasive that it altered her conditions of employment and otherwise created a sexually hostile working environment. Plaintiff Barnes was exposed to this hostile work environment because of her sex—female.

31.     The sexually hostile working environment at Defendants' place of employment was one that a reasonable person would find hostile and abusive, and one that Plaintiff Barnes in fact perceived as hostile and abusive.

32.     As more fully described in the preceding paragraphs of this Complaint, Plaintiff Barnes reported the sexually inappropriate conduct of an employee of Defendants, Mr. Kirby, to management and supervisory personnel on several occasions.

33.     As more fully described in the preceding paragraphs of the Complaint, management and supervisory personnel of Defendants either knew or should have known that its employee(s), including Mr. Kirby, had engaged in inappropriate and highly offensive sexual behavior and acts of intimidation directed towards Plaintiff Barnes and failed to implement prompt and effective corrective action to stop such unlawful behavior from continuing to occur.

34.     Mr. Kirby's ongoing sexual harassment of Plaintiff Barnes coupled with Defendants' agents' and/or employees' intentional retaliatory acts against Plaintiff Barnes after her repeated complaints to Defendants' agents and/or employees in an attempt to stop Mr.

Kirby's outrageous behavior from continuing created intolerable working conditions that would be perceived by a reasonable worker in Plaintiff Barnes' position with Defendants as intolerable.

35.     Defendants' agents and/or employees condoned the sexually inappropriate and highly offensive conduct of Mr. Kirby that was directed towards Plaintiff Barnes and otherwise engaged in the retaliatory acts against Plaintiff Barnes with the intent of forcing Plaintiff Barnes to quit her employment with Defendants.

36.     Moreover, Plaintiff Barnes' working conditions with Defendants that involved a sexually hostile working environment coupled with retaliatory acts that Defendants' agents and/or employees perpetrated against Plaintiff Barnes as a direct result of Plaintiff Barnes' repeated complaints against Mr. Kirby compelled Plaintiff Barnes to reject limited employment offers from the Defendants after the Defendants significantly cut her hours from forty to fifty hours per week to less than ten hours per week.  Additionally, a reasonable person in Plaintiff Barnes' position with the Defendants would have felt compelled to reject the limited work opportunities offered by Defendants to Plaintiff Barnes under the circumstances described in this Count of the Complaint or to effectively resign her employment with Defendants.

37.     Mr. Kirby's ongoing sexual harassment of Plaintiff Barnes coupled with Defendants' agents and/or employees intentional retaliatory acts against Plaintiff Barnes after her repeated complaints to Defendants' agents and/or employees in an attempt to stop Mr. Kirby's outrageous behavior from continuing made it highly foreseeable to Defendants' agents and/or employees that Plaintiff Barnes would reject limited work assignments from the Defendants or effectively resign from her employment with Defendants as a direct result of the Defendants' creation of intolerable working conditions as more fully described in the foregoing paragraphs of the Complaint thereby constituting a "constructive discharge" of Plaintiff Barnes.

13

38.     Defendants, acting as individual entities and/or "joint employers" or alter egos of each other, violated KRS 344.040 (the Kentucky Civil Rights Act) and Title VII of the Civil Rights Act of 1964 by tolerating and/or condoning a sexually hostile workplace towards Plaintiff Barnes during Plaintiff Barnes' term of employment with the Defendants.  As a direct and proximate result of Defendants' unlawful conduct as more fully described in the Complaint, Plaintiff Barnes has suffered and will continue to suffer lost wages and benefits in the past, future lost wages and benefits, has incurred past medical expenses and will continue to incur future medical expenses, has suffered severe mental and emotional distress (past and future), loss of enjoyment of life (past and future), personal indignity (past and future), humiliation (past and future), and suffered other pecuniary and non-pecuniary losses.

39.     Defendants', acting as individual entities and/or as "joint employers" or alter egos of each other, conduct and omissions as described in this Count of the Complaint is properly categorized as oppressive, malicious, exceptionally reprehensible, and demonstrated a total disregard for or deliberate or reckless indifference to the federally protected rights and liberties of Plaintiff Barnes.  Accordingly, an award of punitive damages against Defendants is warranted under the applicable provisions of Title VII of the Civil Rights Act of 1964 and/or other applicable federal statutory provisions.

## COUNT II

## RETALIATION AGAINST PLAINTIFF BARNES IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AND THE KENTUCKY CIVIL RIGHTS ACT.

40.     Plaintiffs reallege each and every allegation set forth in paragraphs 1 through 39 of the Complaint as if fully set forth herein.

41.     As more fully described in the preceding paragraphs of the Complaint, Plaintiff Barnes engaged in activities protected by Title VII of the Civil Rights Act of 1964 and the

Kentucky Civil Rights Act, KRS Chapter 344, while employed by Defendants by reporting incidents of sexual harassment, discrimination and intimidation to management and supervisory personnel employed by the Defendants.

42.    As more fully described in the preceding paragraphs of the Complaint, employees of Defendants, including management and/or supervisory personnel, retaliated against Plaintiff Barnes by, among other things, reducing or eliminating Plaintiff Barnes' working hours and issuing unwarranted write-ups in retaliation for Plaintiff Barnes reporting incidents of sexual harassment, discrimination, and intimidation in the Defendants' workplace and for otherwise engaging in a protected activity under Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act, KRS Chapter 344.

43.    There is a causal connection between Plaintiff Barnes' complaints of sexual harassment, discrimination and intimidation in the Defendants' workplace as alleged in the Complaint and the adverse employment actions and other forms of retaliation perpetrated against Plaintiff Barnes by Defendants as alleged herein including, but not limited to, Defendants reducing and eliminating Plaintiff's working hours and issuing unwarranted write-ups to Plaintiff Barnes.

44.    Defendants' agents' and/or employees' intentional retaliatory acts against Plaintiff Barnes after her repeated complaints to Defendants' agents and/or employees in an attempt to stop Mr. Kirby's outrageous behavior from continuing created intolerable working conditions that would be perceived by a reasonable worker in Plaintiff Barnes' position with Defendants as intolerable.

45.    Defendants' agents and/or employees engaged in the retaliatory acts against Plaintiff Barnes as more fully described in the preceding paragraphs of the Complaint with the

15

intent of forcing Plaintiff Barnes to quit her employment with Defendants or to otherwise encourage her to reject any job assignments made by Defendants to Plaintiff Barnes with limited hours after she engaged in protected activity under Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act, KRS Chapter 344.

46.     Moreover, Plaintiff Barnes' working conditions with Defendants that involved a sexually hostile working environment coupled with retaliatory acts that Defendants' agents and/or employees perpetrated against Plaintiff Barnes as a direct result of Plaintiff Barnes' repeated complaints against Mr. Kirby compelled Plaintiff Barnes to refuse to accept limited employment offers from the Defendants after the Defendants significantly cut her hours from forty to fifty hours per week to less than ten hours per week.  Additionally, a reasonable person in Plaintiff Barnes' position with the Defendants would have felt compelled to reject the limited work opportunities offered by Defendants to Plaintiff Barnes under the circumstances described in this Count of the Complaint or to effectively resign her employment with Defendants

47.     Mr. Kirby's ongoing sexual harassment of Plaintiff Barnes coupled with Defendants' agents and/or employees intentional retaliatory acts against Plaintiff Barnes after her repeated complaints to Defendants' agents and/or employees in an attempt to stop Mr. Kirby's outrageous behavior from continuing made it highly foreseeable to Defendants' agents and/or employees that Plaintiff Barnes would reject limited work assignments from the Defendants or effectively resign her employment with Defendants as a direct result of the Defendants' creation of intolerable working conditions as more fully described in the foregoing paragraphs of the Complaint thereby constituting a "constructive discharge" of Plaintiff Barnes.

48.     As more fully described in the preceding paragraphs of this Complaint, Defendants', acting as individual entities and/or as "joint employers" or alter egos of each other,

violated Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act, KRS Chapter 344 by taking adverse employment actions and other retaliatory actions against Plaintiff Barnes after she engaged in activities protected by Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act, KRS Chapter 344. As a direct and proximate result of Defendant's unlawful and retaliatory conduct, Plaintiff Barnes has suffered and will continue to suffer lost wages and benefits in the past, future lost wages and benefits, has incurred past medical expenses and will continue to incur future medical expenses, has suffered severe mental and emotional distress (past and future), loss of enjoyment of life (past and future), personal indignity (past and future), humiliation (past and future), and suffered other pecuniary and non-pecuniary losses.

49.     Defendants', acting as individual entities and/or as "joint employers" or alter egos of each other, retaliatory conduct as described in this Count of the Complaint is properly categorized as oppressive, malicious, exceptionally reprehensible, and demonstrated a total disregard for or deliberate or reckless indifference to the federally protected rights and liberties of Plaintiff Barnes.  Accordingly, an award of punitive damages against Defendants is warranted under the applicable provisions of Title VII of the Civil Rights Act of 1964 and/or other applicable federal statutory provisions.

## COUNT III

## SEXUALLY HOSTILE WORK ENVIRONMENT AGAINST PLAINTIFF BARNETT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AND THE KENTUCKY CIVIL RIGHTS ACT

50.     Plaintiffs reallege each and every allegation set forth in paragraphs 1 through 49 of the Complaint as if fully set forth herein.

51.     Plaintiff Barnett, as a female, is a member of a protected class under Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act, KRS Chapter 344. Additionally, Plaintiff Barnett is/was an "employee" of the Defendants within the meaning of Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act, KRS Chapter 344.

52.     Defendants, acting as individual entities and/or "joint employers" or alter egos of each other, are/were "employer(s)" of Plaintiff Barnett within the meaning of Title VII of the Civil Rights Act and the Kentucky Civil Rights Act, KRS Chapter 344.

53.     As more fully described in the preceding paragraphs of this Complaint, Plaintiff Barnett was subjected to a workplace of unwelcome and highly offensive conduct and insults of a sexual nature while employed by Defendants that was so severe and pervasive that it altered her conditions of employment and otherwise created a sexually hostile working environment. Plaintiff Barnett was exposed to this hostile work environment because of her sex—female.

54.     The sexually hostile working environment at Defendants' place of employment was one that a reasonable person would find hostile and abusive, and one that Plaintiff Barnett in fact perceived as hostile and abusive.

55.     As more fully described in the preceding paragraphs of this Complaint, Plaintiff Barnett reported the sexually inappropriate conduct of an employee of Defendants, Mr. Tarice, to management and supervisory personnel on at least one occasion.

56.     As more fully described in the preceding paragraphs of the Complaint, management and supervisory personnel of Defendants either knew or should have known that its employee(s), including Mr. Tarice, had engaged in inappropriate and highly offensive sexual behavior and acts of intimidation directed towards Plaintiff Barnett and failed to implement prompt and effective corrective action to stop such unlawful behavior from continuing to occur.

57.     Mr. Tarice's ongoing sexual harassment of Plaintiff Barnett coupled with Defendants' agents' and/or employees' intentional retaliatory acts against Plaintiff Barnett after her complaint to Defendants' agents and/or employees in an attempt to stop Mr. Tarice's outrageous behavior from continuing created intolerable working conditions that would be perceived by a reasonable worker in Plaintiff Barnett's position with Defendants as intolerable.

58.     Defendants' agents and/or employees condoned the sexually inappropriate and highly offensive conduct of Mr. Tarice that was directed towards Plaintiff Barnett and otherwise engaged in the retaliatory acts against Plaintiff Barnett with the intent of forcing Plaintiff Barnett to quit her employment with Defendants.

59.     A reasonable person in Plaintiff Barnett's position with the Defendants would have felt compelled to reject any limited work opportunities offered by Defendants to Plaintiff Barnett under the circumstances described in this Count of the Complaint or to effectively resign their employment with Defendants

60.     Defendants, acting as individual entities and/or "joint employers" or alter egos of each other, violated KRS 344.040 (the Kentucky Civil Rights Act) and Title VII of the Civil Rights Act of 1964 by tolerating and/or condoning a sexually hostile workplace towards Plaintiff Barnett during Plaintiff Barnett's term of employment with the Defendants.  As a direct and proximate result of Defendants' unlawful conduct as more fully described in the Complaint, Plaintiff Barnett has suffered and will continue to suffer lost wages and benefits in the past, future lost wages and benefits, has incurred past medical expenses and will continue to incur future medical expenses, has suffered severe mental and emotional distress (past and future), loss of enjoyment of life (past and future), personal indignity (past and future), humiliation (past and future), and suffered other pecuniary and non-pecuniary losses.

61.     Defendants', acting as individual entities and/or as "joint employers" or alter egos of each other, conduct and omissions as described in this Count of the Complaint is properly categorized as oppressive, malicious, exceptionally reprehensible, and demonstrated a total disregard for or deliberate or reckless indifference to the federally protected rights and liberties of Plaintiff Barnett.  Accordingly, an award of punitive damages against Defendants is warranted under the applicable provisions of Title VII of the Civil Rights Act of 1964 and/or other applicable federal statutory provisions.

**COUNT IV**

**RETALIATION AGAINST PLAINTIFF BARNETT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AND THE KENTUCKY CIVIL RIGHTS ACT.**

62.     Plaintiffs reallege each and every allegation set forth in paragraphs 1 through 61 of the Complaint as if fully set forth herein.

63.     As more fully described in the preceding paragraphs of the Complaint, Plaintiff Barnett engaged in activities protected by Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act, KRS Chapter 344, while employed by Defendants by reporting incidents of sexual harassment, discrimination and intimidation to management and supervisory personnel employed by Defendants.

64.     As more fully described in the preceding paragraphs of the Complaint, employees of Defendants, including management and/or supervisory personnel, retaliated against Plaintiff Barnett by, among other things, reducing or eliminating Plaintiff Barnett's working hours, canceling her health insurance benefits with the Defendants, and ultimately terminating Plaintiff Barnett's employment with Defendants in retaliation for Plaintiff Barnett's reporting of incidents of sexual harassment, discrimination, and intimidation in the workplace and for

otherwise engaging in a protected activity under Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act, KRS Chapter 344.

65.    There is a causal connection between Plaintiff Barnett's complaints of sexual harassment, discrimination and intimidation in the workplace as alleged in the Complaint and the adverse employment actions and other forms of retaliation perpetrated against Plaintiff Barnett by Defendants as alleged herein including, but not limited to, Defendants reducing or eliminating Plaintiff Barnett's working hours, canceling her health insurance benefits with the Defendants, and ultimately terminating Plaintiff Barnett's employment with Defendants.

66.    Defendants' agents' and/or employees' intentional retaliatory acts against Plaintiff Barnett after her complaints to Defendants' agents and/or employees in an attempt to stop Mr. Tarice's outrageous behavior from continuing created intolerable working conditions that would be perceived by a reasonable worker in Plaintiff Barnett's position with Defendants as intolerable.

67.    Defendants' agents and/or employees engaged in the retaliatory acts against Plaintiff Barnett as more fully described in the preceding paragraphs of the Complaint with the intent of forcing Plaintiff Barnett to quit her employment with Defendants after she engaged in protected activity under Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act, KRS Chapter 344.

68.    A reasonable person in Plaintiff Barnett's position with the Defendants that was subjected to the conduct of Defendants' agents and/or employees as more fully described in the Complaint would have felt compelled to resign their employment with Defendants.

69.    As more fully described in the preceding paragraphs of this Complaint, Defendants, acting as individual entities and/or as "joint employers" or alter egos of each other,

violated Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act, KRS Chapter 344, by taking adverse employment actions and other retaliatory actions against Plaintiff Barnett after Plaintiff Barnett engaged in activities protected by Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act, KRS Chapter 344. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Barnett has suffered and will continue to suffer lost wages and benefits in the past, future lost wages and benefits, past and future medical expenses, severe mental and emotional distress (past and future), loss of enjoyment of life (past and future), personal indignity (past and future), humiliation (past and future), and other pecuniary and non-pecuniary losses.

70.     Defendants', acting as individual entities and/or as "joint employers" or alter egos of each other, retaliatory conduct as described in this Count of the Complaint is properly categorized as oppressive, malicious, exceptionally reprehensible, and demonstrated a total disregard for or deliberate or reckless indifference to the federally protected rights and liberties of Plaintiff Barnett.  Accordingly, an award of punitive damages against Defendants is warranted under the applicable provisions of Title VII of the Civil Rights Act of 1964 and/or other applicable federal statutory provisions.

**WHEREFORE**, Plaintiff Barnes and Plaintiff Barnett demand judgment against Defendant Safe Zone Services, LLC, Defendant UEC Holdings, Inc., and/or Defendant United Electric Company, Inc., either jointly or individually as follows:

1.     Judgment against Defendant Safe Zone Services, LLC, Defendant UEC Holdings, Inc. and/or Defendant United Electric Company, Inc., either jointly or individually, in an amount sufficient to fully compensate the Plaintiffs for their respective lost wages and benefits in the past, for their future lost wages and benefits, for their respective medical expenses incurred in the

22

past and future medical expenses, for their respective past and future mental and emotional distress, personal indignity, humiliation, and other pecuniary and non-pecuniary losses suffered as a result of Defendants' violations of Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act, KRS Chapter 344, as more fully alleged in the Complaint;

2.      An award of punitive damages against Defendant Safe Zone Services, LLC, Defendant UEC Holdings, Inc. and/or Defendant United Electric Company, Inc., either jointly or individually, as provided for pursuant to the provisions of Title VII of the Civil Rights Act of 1964 and/or any other applicable federal statutory provision;

3.      For their respective costs expended herein;

4.      For their respective reasonable attorney's fees as provided for by statute;

5.      For a trial by jury on all claims set forth herein;

6.      For pre-judgment and post-judgment interest at the prevailing legal rate;

7.      For leave to amend the pleadings as proof develops; and

8.      For any and all other relief that either Plaintiff may be entitled to under the law.

Respectfully submitted,


      /s/   Charles W. Miller
Charles W. Miller
cmiller@cwmassociates.com
T. Ryan Greer
**CHARLES W. MILLER & ASSOCIATES**
**www.cwmassociates.com**
Waterfront Plaza, Suite 2104
325 West Main Street
Louisville, KY  40202
(502) 583-2300
(502) 583-2323 (fax)

**COUNSEL FOR PLAINTIFFS**